IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| DOMINIQUE POLLARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DECA DENTAL MANAGEMENT, LLC d/b/a DECA DENTAL GROUP,<br><br>Defendant. | Case No. 6:26-cv-00102<br><br>Defendant's Motion to Dismiss the Putative Class Action Complaint, or in the Alternative, Motion to Strike the Putative Class Allegations |

DECA Dental Management d/b/a DECA Dental Group ("Defendant" or "Ideal Dental"), by its counsel, respectfully moves for an ordering dismissing this action in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), because Dominique Pollard ("Plaintiff") fails to allege subject matter jurisdiction or state a claim upon which relief can be granted. Alternatively, Defendant respectfully moves for an order striking the putative class allegations, pursuant to Fed. R. Civ. P. 12(f), because the putative class definition is overly broad, includes uninjured putative class members that lack Article III standing, and fails to satisfy the Fed. R. Civ. P. 23 requirements. The grounds for this motion are more fully set forth in the brief filed with this motion.

# TABLE OF CONTENTS

**PAGE**


I. INTRODUCTION .......... 1

II. STATEMENT OF RELEVANT FACTS .......... 1

III. RULE 8 AND 12 LEGAL STANDARD .......... 2

IV. THE LAWSUIT MUST BE DISMISSED PURSUANT TO RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION .......... 3

- A. Plaintiff fails to allege an injury-in-fact that can be traced to Defendant's conduct because she concedes that prior to visiting the Website, she voluntarily provided her information to Google as a condition of creating a Google account, which in turn alowed Google to build a consumer profile for targeted advertising purposes. .......... 4
- B. Plaintiff fails to allege an injury-in-fact that can be traced to Defendant's conduct because the Complaint lacks factual allegations that Defendant disclosed her specific information to Google. .......... 6

V. THE LAWSUIT MUST BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM. .......... 10

- A. The Lawsuit must be dismissed because Plaintiff was aware of Defendant's alleged use of DoubleClick API and Google Analytics and consented to the alleged targeted advertising. .......... 10
- B. The ECPA and FSCA claims must be dismissed because the Complaint lacks factual allegations that Defendant intercepted and transmitted her electronic communications on the Website to Google. .......... 13
- C. The ECPA and FSCA claims are legally deficient because the Party Exception applies and is not displaced by the Crime-Tort Exception. .......... 13
- D. The breach of confidence claim must be dismissed because it fails to allege (i) disclosure of Plaintiff's nonpublic information; (ii) the existence of a confidential relationship; or (iii) actual harm. .......... 16

E. The unjust enrichment claim must be dismissed because (i) it fails to allege disclosure of Plaintiff's nonpublic information; (ii) is duplicative of her other claims. ....................................................18

VI. ALTERNATIVELY, THE PUTATIVE CLASS ALLEGATIONS MUST BE STRICKEN BECAUSE THE PUTATIVE CLASS DEFINITION IS OVERLY BROAD, LACKS TEMPORAL LIMITS, AND INCLUDES UNINJURED MEMBERS THAT DO NOT HAVE A GOOGLE ACCOUNT. ....................................................20

VII. CONCLUSION....................................................21

# TABLE OF AUTHORITIES

**PAGE**

**CASE**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 2,3

*Baker v. Akumin Corp.*,
No. 0:23-CV-62396, 2024 WL 1931480 (S.D. Fla. Apr. 16, 2024)........... 16

*Baron v. Syniverse Corp.*,
No. 8:21-CV-2349-SCB-SPF, 2022 WL 6162696 (M.D. Fla. Oct. 7, 2022)... 16

*Baughcum v. Jackson*,
92 F.4th 1024 (11th Cir. 2024) ........................................................ 4

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ............................................. 8

*Caine v. Sturdy Mem'l Hosp., Inc.*,
No. 25-CV-10261-ADB, 2026 WL 673483 (D. Mass. Mar. 10, 2026) ...... 13

*Cichowski v. CVS Pharmacy*,
No. 3:22-CV-599-TJC-PDB, 2024 WL 234050 (M.D. Fla. Jan. 18, 2024),
*aff'd sub nom. Cichowski Fam. v. CVS Health Corp.*, No. 24-10183,
2024 WL 4930402 (11th Cir. Dec. 2, 2024)............................................ 15

*Clapper v. Amnesty Intern. USA*,
568 U.S. 398 (2013)......................................................................... 3

*Cravens v. Garda CL Se., Inc.*,
No. 24-CV-80400-RLR, 2024 WL 5058304 (S.D. Fla. Dec. 9, 2024) ....... 17

*Cobbs v. PetMed Express, Inc.*,
No. 25-8045CSC8-CIV, 2026 WL 905375 (S.D. Fla. Jan. 14, 2026)......... 9

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir.2006)................................................................ 19

*Desue v. 20/20 Eye Care Network, Inc.*,
No. 21-CIV-61275-RAR, 2022 WL 796367 (S.D. Fla. Mar. 15, 2022) ..... 14

*DiPierro v. Fla. Health Scis. Ctr., Inc.*,
737 F. Supp. 3d 1314 (M.D. Fla. 2024)....................................................... 16

*Doe v. Amgen, Inc.*,
2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ................................................ 8

*Doe v. Post Acute Medical, LLC,*
No. 1:24-CV-547, 2025 WL 511069 (M.D. Pa. Feb. 14, 2025).................. 5

*Dykes v. Dudek*,
No. 4:11CV116/RS-WCS, 2011 WL 4904407 (N.D. Fla. Oct. 14, 2011) .. 19

*Elkind v. Bennett*,
958 So. 2d 1088 (Fla. Dist. Ct. App. 2007) ................................................. 15

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
380 F. Supp. 3d 1243 (M.D. Fla. 2019)....................................................... 16

*In re Brinker Data Incident Litig.*,
No. 3:18-cv-686-J-32MCR, 2020 WL 698148 (M.D. Fla. Jan. 27, 2020).. 14

*Kishnani v. Royal Carribbean Cruises, Ltd.*,
2025 WL 1745726 (N.D. Cal. Jun 24, 2025)............................................... 9

*K.L. v. Legacy Health*,
No. 3:23-CV-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) ............ 9

*Licul v. Volkswagen Grp. of Am., Inc.*,
No. 13-61686-CIV, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) .............. 17,18

*Lopez v. Consumer Safety Tech., LLC*,
No. 8:24-CV-150-WFJ-AAS, 2024 WL 2111876 (M.D. Fla. May 10, 2024). 18

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)......................................................................... 7

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) .................................................................. 14

*Murphy v. Thomas Jefferson University Hospitals, Inc.*,
2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) .............................................. 7

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024).................................................. 8

*Nguyen* v. *Abbott Lab'ys, Inc.*,
No. 24 CV 8289, 2026 WL 579206 (N.D. Ill. Mar. 2, 2026)...................... *passim*

*Podroykin v. Am. Armed Forces Mut. Aid Ass'n*,
634 F. Supp. 3d 265 (E.D. Va. 2022) ........................................................ 3

*Preisler v. Eastpoint Rec. Grp., Inc.*,
2021 WL 2110794 (S.D. Fla. May 25, 2021) ............................................. 16,17

*Progin v. UMass Memorial Health Care, Inc.*,
No. 25-CV-40003-ADB, 2026 WL 632770 (D. Mass. Mar. 6, 2026) ........ 13,14

*Purvis v. Aveanna Healthcare,* LLC
563 F.Supp.3d 1360 (N.D. Ga. Sept. 27, 2021)........................................... 6

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ................................................................. 4

*Santoro v. Tower Health*,
No. CV 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024).................. 7

*Smart v. Main Line Health*,
No. CV 22-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024).................. 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)................................................................................... 3

*Stevens v. TD Bank, N.A.*,
No. CV 24-8311, 2025 WL 1779164 (D.N.J. June 27, 2025)..................... 7,8

*Tyson Foods, Inc. v. Bouaphakeo*,

577 U.S. 442 (2016) ........ 4

*United States v. Diekemper*,
604 F.3d 345 (7th Cir. 2010) ........ 4

*Valiente v. Nexgen Glob., LLC*,
No. 23-13308, 2025 WL 3140480 (11th Cir. Nov. 10, 2025). ........ 10

*Vega v. T–Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir.2009) ........ 19

*Weaver v. Mateer & Harbert, P.A.*,
No. 5:09-CV-514-OC-34TBS, 2012 WL 3065362
(M.D. Fla. July 27, 2012), *aff'd*, 523 F. App'x 565 (11th Cir. 2013) ........ 17

*Wright v. TrueCare Prop. Holdings, LLC*,
No. 3:25-CV-00786, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025)........ 6,7

**RULE**

Fed. R. Civ. P. 8(a)(2) ........ 2

Fed. R. Civ. P. 12(b) ........ *passim*

Fed. R. Civ. P. 12(b)(1)........ 3, 20

Fed. R. Civ. P. 12(b)(6)........ 9,20

Fed. R. Civ. P. 12(f)........ 18

Fed. R. Civ. P. 23........ *passim*

Fed. R. Civ. P. 23(a)........ 18

Fed. R. Civ. P. 23(b) ........ 19

**STATUTE**

18 U.S.C. § 2511(1) *et seq.*........ *passim*

Fla. Stat. 934.01, *et seq.* .......................................................................... *passim*

## I. INTRODUCTION

Plaintiff filed a putative class action lawsuit a year after visiting Defendant's website https://www.myidealdental.com which allegedly contained tracking code owned by Google that caused her to receive targeted advertisements on her Google account for dental products and services. However, as explained below, the lawsuit must be dismissed because Plaintiff concedes that *prior to visiting the Website*, she voluntarily provided her personal information to Google, which allowed Google to create a robust consumer profile that Google leveraged for targeted advertising purposes. Furthermore, the Complaint lacks factual allegations regarding Plaintiff's unique experience on the Website. Rather, it contains a myriad of hypothetical scenarios based upon a fictious visitor.

## II. STATEMENT OF RELEVANT FACTS

The Complaint alleges that Defendant operates https://www.myidealdental.com ("Website") and that that Plaintiff used the Website to make an appointment, but "intentionally omits…the specific dental services received by Plaintiff[.]" *Id.*, ¶¶ 1, 9. The Complaint alleges that "unbeknownst to Plaintiff", "Defendant chose to embed the DoubleClick API and Google Analytics Tracking code…on the Website", which "disclosed her PHI – including the specific details about her dental appointments – to Google for targeted advertising purposes." *Id.*, ¶¶ 10, 14. The Complaint further alleges that "after booking appointments on

the…Website, Plaintiff began receiving targeted advertisements for similar products and services." *Id*., ¶ 11. Additionally, Plaintiff alleges that as a result of Defendant's alleged conduct, she is entitled to recover statutory and common law damages based upon theories of breach of confidence, unjust enrichment, violation of the Florida Security of Communications Act (Fla. Stat. 934.01, *et seq*.) ("FSCA"), and violation of the Electronic Communications Privacy Act (18 U.S.C. § 2511(1) *et seq*.) ("ECPA").

## III. RULE 8 AND 12 LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. "Rule 8…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal citation omitted). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter…to state a claim to relief that is plausible on its face." *Id.* (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(internal citation omitted). "The plausibility asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citation omitted). Applying this standard, the lawsuit must be dismissed for the reasons set forth below.

## IV. THE LAWSUIT MUST BE DISMISSED PURSUANT TO RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION.

The United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art. III, § 2. "One element of the case-or-controversy requirement is that [a] plaintiff[ ] must establish that [she has] standing to sue." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013). In turn, a plaintiff must plead that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [defendant], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal citation omitted). "[P]laintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* Furthermore, "in evaluating a class action complaint[,] standing is analyzed based on allegations made by the named plaintiff[.]" *Podroykin v. Am. Armed Forces Mut. Aid Ass'n*, 634 F. Supp. 3d 265, 269 (E.D. Va. 2022) (internal citation omitted). Indeed, "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action

or not." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016). Applying this standard, the lawsuit must be dismissed for lack of subject-matter jurisdiction because as set forth below, Plaintiff fails to allege Article III standing to sue.

**A. Plaintiff fails to allege an injury-in-fact that can be traced to Defendant's conduct because she concedes that prior to visiting the Website, she voluntarily provided her information to Google as a condition of creating a Google account, which in turn allowed Google to build a consumer profile for targeted advertising purposes.**

"An injury is fairly traceable to the defendant if it results from the defendant's action and is not the result of an independent action of some third party." *Baughcum v. Jackson*, 92 F.4th 1024, 1032 (11th Cir. 2024). To satisfy the traceability requirement, allegations must "be supported by more than unadorned speculation." *United States v. Diekemper*, 604 F.3d 345, 350 (7th Cir. 2010). Furthermore, the "pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012). "Likewise, an injury can be redressed by the court when a decision for the plaintiff would make it significantly more likely that he would obtain relief that directly remedies his injury." *Baughcum*, 92 F.4th 1024, 1032. "And it must be the effect of the court's judgment on the defendant, rather than some third party, that redresses the injury, whether directly or indirectly." *Id*.

Applying this standard, the lawsuit must be dismissed because Plaintiff concedes that Google was responsible for the alleged conduct well before she visited

Defendant's Website. In fact, Plaintiff concedes that "when registering for her Gmail account, Google required that she provide" her personal information to Google, including her "full legal name, date of birth, and gender." *See* Complaint, ¶ 12. Plaintiff alleges that "[e]very time [she] accesse[d] her Gmail account, Google collect[ed] information related to her IP address and electronic device (e.g., browser, operating system, screen resolution, etc.) and store[d] it in a profile maintained by Google for targeted advertising purposes." *Id*. Plaintiff further concedes that "Google utilize[d] all of these tracking features in order to build [a] robust consumer profile[ ] it [could] then leverage for targeted advertising purposes." *Id*. Accordingly, the alleged harm is tied to Plaintiff's use of her Google account and was the result of Google's conduct that occurred well before Plaintiff visited Defendant's Website. Notably, Plaintiff does not even allege that she received targeted advertisements on her Google account relating to Defendant's products or services. *See id*., *generally*; *see also Doe v. Post Acute Medical, LLC,* No. 1:24-CV-547, 2025 WL 511069, at *8 (M.D. Pa. Feb. 14, 2025) ("That Doe does not allege a temporal connection between his use of defendants' website and the appearance of the advertisements further weakens the causal inference from the allegations in the complaint. Other courts have dismissed claims based upon similarly amorphous allegations."). Accordingly, Plaintiff fails to trace her alleged harm to Defendant.

**B. Plaintiff fails to allege an injury-in-fact that can be traced to Defendant's conduct because the Complaint lacks factual allegations that Defendant disclosed her specific information to Google.**

Despite the Complaint being 47 pages, "there are no alleged facts suggesting that Defendant disclosed [*her specific*] information to a third party." *Purvis v. Aveanna Healthcare,* LLC, 563 F.Supp.3d 1360, 1378 (N.D. Ga. Sept. 27, 2021). Indeed, "[t]he mere existence of tracking tools on [Defendant's] website does not in itself establish the disclosure of HIPAA-protected information." *Nguyen* v. *Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2026 WL 579206, at *5 (N.D. Ill. Mar. 2, 2026). Furthermore, the "screenshots [within the Complaint] fails to plausibly allege that [Defendant] disclosed [Plaintiff's] HIPAA-protected information." *Id*. Notably, the Complaint does not contain screenshots relating Plaintiff's unique experience on the Website, or demonstrate how the DoubleClick API and Google Analytics Tracking code collected her specific information on the Website.[1] *See id*., *generally*; *see also Wright v. TrueCare Prop. Holdings, LLC,* No. 3:25-CV-00786-JES-BLM, 2025 WL 3248749, at *2 (S.D. Cal. Nov. 21, 2025) ("Plaintiff attached a screenshot of her downloaded browsing data tracked by Meta on Defendant's website, which shows 6

[1] The Complaint does not allege that the screenshots contains Plaintiff's unique identifiers or page view events. *See* Complaint, ¶ 83,

tracked events categorized as searches, contacts, or page views…but do not reveal on their face any information about the searches, contacts, or pages themselves…The mere fact that Plaintiff used Defendant's website does not constitute PHI because it does not necessarily reveal any information related to her healthcare, conditions, or patient status."); *Santoro v. Tower Health*, No. CV 22-4580, 2024 WL 1773371, at *4 (E.D. Pa. Apr. 24, 2024) ("we cannot determine what information [plaintiff] actually communicated to [defendant] via his web browsing, and thus cannot tell whether that information might be covered by HIPAA."); *Murphy v. Thomas Jefferson University Hospitals, Inc.*, 2023 WL 7017734, at *3 (E.D. Pa. Oct. 10, 2023) ("Plaintiffs do not allege, for example, that any specific test results, diagnoses, or sensitive messages were intercepted or improperly disclosed. To provide [defendant] with sufficient notice of its alleged misconduct, Plaintiffs must offer more detailed descriptions of the communications and information that they assert were intercepted.").

Here, rather than providing factual allegations of Plaintiff's unique Website experience, the Complaint contains conclusory allegations based on the hypothetical experience of a fictitious visitor, which fails to support Article III standing for Plaintiff. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that an injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."). In the context of pixel litigation, courts have

dismissed lawsuits for similar pleading deficiencies. *See Stevens v. TD Bank, N.A.*, No. CV 24-8311 (RMB/AMD), 2025 WL 1779164, at *5 (D.N.J. June 27, 2025) ("Plaintiff improperly relies on the general functionality of the Pixel and its hypothetical capacity to transmit sensitive information. But allegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected…And allegations regarding a hypothetical visitor to [defendant's] website do not suffice…The Complaint must instead allege what specific [legally]-protected information Plaintiff *himself* provided to Defendant via his browsing activity that was subsequently disclosed[.]") (listing cases); *Smart v. Main Line Health*, No. CV 22-5239, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024) ("the Amended Complaint provides an example of a search by a hypothetical visitor to the…webpage…[which] consists of nothing more than bare-bone conclusions which are insufficient to withstand dismissal."); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1083–84 (W.D. Wash. 2024) ("Plaintiff provides no additional factual information tying her actual activities to the allegations made by the hypothetical purportedly demonstrating disclosure of Private Information."); *Doe v. Amgen, Inc.*, 2024 WL 575248, at *2 (C.D. Cal. Jan. 29, 2024) ("It is not enough for Plaintiff to plead conclusory allegations that Defendant violated her privacy without offering any facts that her information was collected and then improperly disclosed to unauthorized third parties."); *B.K. v.*

*Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (granting motion to dismiss because the complaint was "replete with conjectures and hypothetical scenarios and patients" and "Plaintiffs fail to allege any specificity as to what medical information was allegedly disclosed or when it was disclosed."); *Cobbs v. PetMed Express, Inc.*, No. 25-8045CSC8-CIV, 2026 WL 905375, at *10 (S.D. Fla. Jan. 14, 2026) ("Plaintiff's First Amended Complaint is bare, asserting no concrete damage or loss to the Plaintiffs' themselves resulting from the alleged statutory violation—and ultimately leaving Plaintiff with nothing more than hypothetical harm"); *Kishnani v. Royal Carribbean Cruises, Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. Jun 24, 2025) ("though Plaintiff alleges that Defendants ... *could* intrude on Plaintiff's right to privacy, he fails to convert that hypothetical into concrete harm to *him*"); *K.L. v. Legacy Health,* No. 3:23-CV-1886-SI, 2024 WL 4794657, at *5 (D. Or. Nov. 14, 2024) (denying motion to dismiss because "[p]laintiff provide[d] in her complaint a screenshot of Google Analytics running on *her* Patient Portal (as opposed to the page of a hypothetical patient) and states with particularity that she received advertisements about the same medical conditions that were the subject of her activities on her portal."). Accordingly, the lawsuit must be dismissed.

## V. THE LAWSUIT MUST BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM.

### A. The Lawsuit must be dismissed because Plaintiff was aware of Defendant's alleged use of DoubleClick API and Google Analytics and consented to the alleged targeted advertising.

The lawsuit must be dismissed for failure to state a claim because Plaintiff consented to the alleged conduct and concedes in the Complaint that she received notice, via the Privacy Policy, of Defendant's alleged use of DoubleClick API and Google Analytics on the Website.

To book an appointment on the Website, a visitor, including Plaintiff, is required to complete the registration process, which provides a visitor, including Plaintiff, the ability to opt-in to receive marketing and promotional material. *See* Declaration of Robert Boone at ¶ 6. As illustrated below, when Plaintiff allegedly made an appointment on the Website in or around March 2025, she selected the prompt to receive marketing and promotional materials via email and text message:







*Id*. Furthermore, within the Complaint, Plaintiff relies on Defendant's Privacy Policy (*See* ¶ 78, fn. 30), which at all times relevant hereto stated that:

> When you use the Services, we may send one or more cookies (which are small text files) to your computer or mobile device, to help analyze our web page flow, customize our content, measure promotional

> effectiveness, and promote trust and safety. You are always free to decline our cookies if your browser permits, although doing so may interfere with your ability to use the Services or certain features of the Services. We may also use Google Analytics or a similar service that uses cookies to help us analyze how users use the Services…
>
> We may disclose your personal information, to be used only for legitimate purposes in keeping with this Privacy Policy to third party vendors who provide services in support of our operations…
>
> You may decline to share certain information with us, in which case we may not be able to provide you with our Services. If you receive marketing e-mails from us and do not wish to receive future e-mails, you can opt-out by using the unsubscribe process at the bottom of the email. If you receive text messages from us and do not wish to receive future text messages, text STOP in response to any text message received…To make a request related to your personal information or otherwise exercise your rights, you may contact us using the contact information provided below…
>
> Please contact us with any questions, comments or concerns about this Privacy Policy or our use of your personal information by e-mail at privacy@decadental.com or by mail at DECA Dental Group, Attn: Privacy Officer, 12750 Merit Dr Ste 1100, Dallas, TX 75251.

*Id*. at ¶ 5. Since Plaintiff allegedly made an appointment on the Website in or around March 2025, Defendant did not receive a written or oral request from Plaintiff opting-out of Defendant's ability pursuant to the Privacy Policy to send marketing and promotional materials via email and text message. *Id*. at ¶ 7. Accordingly, the lawsuit must be dismissed as Plaintiff consented to the alleged conduct.

### B. The ECPA and FSCA claims must be dismissed because the Complaint lacks factual allegations that Defendant intercepted and transmitted her electronic communications on the Website to Google.

Both the ECPA and FSCA provide liability to any person who "intentionally intercepts…any…electronic communication[.]" Fla. Stat. § 934.03(1)(a); 18 U.S.C. § 2511(1)(a). The statutes define "intercept" as the "acquisition of the contents of any...electronic...communication through the use of any electronic…device." Fla. Stat. § 934.02(3); 18 U.S.C. § 2510(4). The statutes further define "contents" as "any information concerning the substance, purport, or meaning of th[e] communication." Fla. Stat. § 934.02(7); 18 U.S.C. § 2510(8). Here, as explained above, Plaintiff fails to demonstrate how Defendant, via the alleged use of the DoubleClick API and Google Analytics Tracking code, collected and intercepted her electronic communications on the Website to Google. *See* Complaint, *generally*.

### C. The ECPA and FSCA claims are legally deficient because the Party Exception applies and is not displaced by the Crime-Tort Exception.

The ECPA provides that "[i]t shall not be unlawful…to intercept a…communication where such person is a party to the communication [the 'Party Exception'] unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State [the 'Crime-Tort Exception']." 18 U.S.C. § 2511(2)(d). Here,

Plaintiff concedes that Defendant was a party to the alleged communication[2], but claims that the Crime-Tort Exception applies because the "information that Defendant [allegedly] disclosed to Google qualifies as IIHI" and therefore "constitutes tortious and/or criminal conduct through a violation of 42 U.S.C. § 1320d-6." *See* Complaint ¶ 141. However, as explained above, because Plaintiff does not "sufficiently allege the disclosure of [her specific] HIPAA-protected information to [Defendant] in the first place, [she] fail[s] to allege that the crime-tort exception applies." *Nguyen*, 2025 WL 2299753, at *5. Furthermore, "to state a claim under the…[C]rime-[T]ort [E]xception, [Plaintiff] must plead facts showing that [Defendant] purposefully—not merely knowingly or negligently—committed criminal or tortious acts." *Caine v. Sturdy Mem'l Hosp., Inc.*, No. 25-CV-10261-ADB, 2026 WL 673483, at *3 (D. Mass. Mar. 10, 2026). Indeed, "[i]t is not enough to allege that Defendant[ ] knowingly committed such acts, because that omits the requirement that the acts be done for criminal and tortious purposes as required by the language of the statute." *Progin v. UMass Memorial Health Care, Inc*., No. 25-CV-40003-ADB, 2026 WL 632770, at *4 (D. Mass. Mar. 6, 2026). "In other words,

[2] *See* Complaint ¶ 80 ("Defendant's Website…allows patients to communicate with Defendant[.]"). Similar to the ECPA, the FSCA provides that "[i]t is lawful for a person to intercept a…electronic communication when all of the parties to the communication have given prior consent to such interception." Fla. Stat. § 934.03(3)(d). As explained above, Plaintiff provided consent to the alleged conduct, and therefore the FSCA claim is legally deficient.

purpose is an essential element of ECPA, distinct from the minimal intent [of knowingness] required under HIPAA, and the [c]omplaint must therefore plead sufficient facts to satisfy this heightened intent requirement under ECPA." *Id.*

Here, the "Complaint falls short of the required showing." *Id*. First, "[t]he mere existence of tracking tools on [Defendant's] website does not in itself establish the disclosure of HIPAA-protected information." *Nguyen,* 2026 WL 579206, at *5. Even if the "allegations may support the inference that Defendant [ ] purposefully committed certain acts, such as the installation of the at-issue tracking tools or even the disclosure of certain forms of information to…Google, they do not support the inference that Defendant[ ] purposefully committed the criminal and tortious acts specified by Plaintiff[.]" *Progin*, 2026 WL 632770, at *4. "More specifically, the [allegations] related to individually identifiable health information are insufficient to support the conclusion that Defendant[ ] purposefully accessed, obtained, and disclosed such information because they knew they had to in order to receive marketing benefits." *Id*. "It is not enough that a crime or tort [may have been] a ... side-effect of the [alleged] interception." *Id*. Accordingly, these claims must be dismissed.

**D. The breach of confidence claim must be dismissed because it fails to allege (i) disclosure of Plaintiff's nonpublic information; (ii) the existence of a confidential relationship; or (iii) actual harm.**

Under Florida law, a breach of confidence involves "the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020). Disclosure is "[t]he act or process of making known something that was previously unknown." *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-J-32MCR, 2020 WL 698148 at *20 (M.D. Fla. Jan. 27, 2020) (internal citation omitted). "A confidential relationship is found where confidence is reposed by one party and a trust accepted by the other." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2022 WL 796367, at *9 (S.D. Fla. Mar. 15, 2022) (internal citation omitted). Here, as explained above, Plaintiff's breach of confidence claim fails because there are no alleged facts suggesting that Defendant disclosed her specific information to Google. *See* Complaint, *generally*. Furthermore, Plaintiff fails to allege the existence of a confidential relationship. Rather, Plaintiff alleges that she visited Defendant's public facing Website, which did not require her to enter log-in credentials to be redirected to a private section.

Plaintiff's claim is also deficient because she "must allege what confidence was breached and how its disclosure damaged" her. *Elkind v. Bennett*, 958 So. 2d 1088, 1092 (Fla. Dist. Ct. App. 2007). Indeed, "the claimant must suffer some actual

harm." *Cichowski v. CVS Pharmacy*, No. 3:22-CV-599-TJC-PDB, 2024 WL 234050, at *2 (M.D. Fla. Jan. 18, 2024), *aff'd sub nom. Cichowski Fam. v. CVS Health Corp.*, No. 24-10183, 2024 WL 4930402 (11th Cir. Dec. 2, 2024). Here, Plaintiff alleges that she suffered "embarrassment in the form of unwanted targeted advertisements", loss of benefit of the bargain, and diminished value to her information. See Complaint, ¶ 154. However, as explained above, Plaintiff fails to trace her alleged damages to Defendant because she concedes that prior to visiting the Website, she voluntarily provided her information to Google to create a Google Account, which Google used to build a robust consumer profile.

Furthermore, Plaintiff's damages theories have continuously been rejected by Florida courts. *See DiPierro v. Fla. Health Scis. Ctr., Inc.*, 737 F. Supp. 3d 1314, 1327 (M.D. Fla. 2024) ("[m]any courts have cast doubt on [ ] the benefit of the bargain theory…in data breach litigation[.]"); *Baker v. Akumin Corp.*, No. 0:23-CV-62396, 2024 WL 1931480, at *7 (S.D. Fla. Apr. 16, 2024) ("Plaintiff's allegations of lost benefit of the bargain suffer from the same conclusory pleading and lack of facts as do his allegations of other categories of injuries. He fails to allege actual facts demonstrating that he paid Defendant more than the value of medical services or that Defendant charges an amount for data security above the value of medical services"); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) ("Plaintiffs have not alleged that their personal

information has an independent monetary value that is now less than it was before the Data Breach.") *Baron v. Syniverse Corp.*, No. 8:21-CV-2349-SCB-SPF, 2022 WL 6162696, at *1 (M.D. Fla. Oct. 7, 2022) ("Plaintiffs fail to plausibly allege a concrete harm by virtue of their alleged anxiety and emotional distress. First, Plaintiffs' blanket allegations of anxiety, emotional distress, without more, are too conclusory…Second, given the finding above that Plaintiffs fail to plausibly allege that the disclosure of their private information is a concrete harm, their alleged anxiety and emotional distress arising from that harm, standing alone, are not intangible harms sufficiently concrete to confer standing."); *Preisler v. Eastpoint Rec. Grp., Inc*., 2021 WL 2110794, at *5 (S.D. Fla. May 25, 2021) (a plaintiff "cannot rely solely on his feelings of distress, confusion, or anxiety to fabricate concrete injury"). Accordingly, this claim fails as a matter of law.

**E. The unjust enrichment claim must be dismissed because (i) it fails to allege disclosure of Plaintiff's nonpublic information; (ii) is duplicative of her other claims.**

Under Florida law, a claim for unjust enrichment requires that: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Cravens v. Garda CL Se., Inc.*, No. 24-CV-80400-RLR, 2024 WL 5058304, at *10 (S.D. Fla. Dec. 9, 2024) (internal

citation omitted). "[H]owever, a claim for unjust enrichment is equitable in nature, and thus, not available when there is an adequate legal remedy." *Weaver v. Mateer & Harbert, P.A.*, No. 5:09-CV-514-OC-34TBS, 2012 WL 3065362, at *11 (M.D. Fla. July 27, 2012), *aff'd*, 523 F. App'x 565 (11th Cir. 2013). Furthermore, a plaintiff may not plead unjust enrichment in the alternative when it "relies on the factual predicate common to all [her] claims." *Id.*; *see also Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013) ("where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action").

Here, "Plaintiff['s] unjust enrichment claim is a vague catch-all that does no more than incorporate by reference the alleged wrongdoing already addressed by [her] other legal causes of action, and thus should be dismissed as duplicative." *Licul*, 2013 WL 6328734, at *7. Indeed, Plaintiff[ ] allege[s] broadly that it would be inequitable for [Defendant] to retain benefits gained through the misconduct…alleged elsewhere throughout the Complaint[.]" *Id.*; *see also* Complaint ¶ 153(f) (within breach of confidence cause of action, similarly alleging that "Defendant took something of value from Plaintiff…and derived benefit therefrom…without compensation for such data"). Simply put, "Plaintiff[ ] make[s] no effort to distinguish the misconduct…supporting [her] unjust enrichment claim

from the alleged wrongdoing underlying [her other] claim[s.]" *Id*. Accordingly, this claim fails as a matter of law and must be dismissed.

## VI. ALTERNATIVELY, THE PUTATIVE CLASS ALLEGATIONS MUST BE STRICKEN BECAUSE THE PUTATIVE CLASS DEFINITION IS OVERLY BROAD, LACKS TEMPORAL LIMITS, AND INCLUDES UNINJURED MEMBERS THAT DO NOT HAVE A GOOGLE ACCOUNT.

"When a defendant moves to strike class allegations under Rule 12(f), many courts view the Rule 23 factors through the lens of the Rule 12(f) standard." *Lopez v. Consumer Safety Tech., LLC,* No. 8:24-CV-150-WFJ-AAS, 2024 WL 2111876, at *4 (M.D. Fla. May 10, 2024) (internal citation omitted). "Governed by Rule 23, class certification proceeds in two parts." *Id*. "First, the putative class representative must demonstrate that the Rule 23(a) factors of numerosity, commonality, typicality, and adequacy are satisfied." *Id*. "To permit an evaluation of these factors, the proposed class must be adequately defined and clearly ascertainable." *Id*. "Next, the representative must also demonstrate entitlement to class relief under one of the three provisions in Rule 23(b)." *Id*. (internal citation omitted). "Rule 23 demands an early consideration of class certification, including its practical implications for case manageability" in order to avoid undue delay that would "introduc[e] needless and avoidable complexity into an already complex case." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir.2009). Here, Plaintiff defines the nationwide class and Florida subclass to include "all persons…who scheduled an appointment on the

Website[.]" *See* Complaint, ¶ 102. However, the class definitions is overly broad because it lacks temporal limits and "include[s] individuals who are without standing to maintain the action on their own behalf." *Dykes v. Dudek*, No. 4:11CV116/RS-WCS, 2011 WL 4904407, at *2 (N.D. Fla. Oct. 14, 2011) *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir.2006) ("[N]o class may be certified that contains members lacking Article III standing."). Indeed, the class definition includes members whose personally identifiable information was not collected, including those who do not have a Google account. Accordingly, the class definitions must be stricken or narrowed.

## VII. CONCLUSION

For the reasons stated above, Defendant respectfully requests that this Court dismiss the lawsuit in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Alternatively, Defendant respectfully requests that this Court strike the putative class allegations pursuant to Fed. R. Civ. P. 12(f) and 23. Defendant further requests all other relief as this Court deems just and equitable.

RESPECTFULLY submitted this 27th day of April, 2026.

**WOOD, SMITH, HENNING & BERMAN LLP**

By: */s/ Sander R. Weiner*
Sander R. Weiner
Christopher J. Seusing *(pro hac vice forthcoming)*
Sean V. Patel (*pro hac vice forthcoming*)

1501 S. Church Avenue, Suite 200
Tampa, Florida 33629
Tel: (813) 422-6910
Fax: (813) 425-6983
Email: sweiner@wshblaw.com

## LOCAL RULE 3.01(g) CERTIFICATION

I, the undersigned attorney of record, conferred in good faith with lead counsel for Plaintiff on April 27, 2026 regarding the relief requested in this Motion. On April 27, 2026, Plaintiff's counsel indicated that Plaintiff opposes the relief sought herein, including dismissal of the lawsuit, and the alternative request to strike the putative class allegations.

## CERTIFICATE OF SERVICE

I hereby certify that on this this 27th day of April, 2026, I presented the foregoing, **Defendant's Motion to Dismiss the Putative Class Action Complaint, or in the Alternative, Motion to Strike the Putative Class Allegations,** to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of the filing to the following:

All Parties/Counsel of Record

*/s/ Sander R. Weiner*