**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| DOMINIQUE POLLARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>DECA DENTAL MANAGEMENT, LLC d/b/a DECA DENTAL GROUP,<br><br>Defendant. | Case No. 6:26-cv-00102-CEM-DCI<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS** |

# TABLE OF CONTENTS

**PAGES**


INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 3

I. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS ........ 3

A. Plaintiff's Injury Is Concrete And Particularized ........ 3

B. Plaintiff's Injury Is Fairly Traceable To Defendant's Conduct ........ 6

C. Plaintiff Adequately Pleads Disclosure Of Her Specific Information ........ 7

II. PLAINTIFF DID NOT CONSENT TO DEFENDANT'S CONDUCT ........ 8

III. PLAINTIFF STATES A CLAIM UNDER THE ECPA AND THE FSCA ........ 10

A. Plaintiff Adequately Alleges Interception And Disclosure Of "Contents" Of Her Communications ........ 10

B. Defendant's Conduct Falls Squarely Within The Crime-Tort Exception ........ 12

IV. PLAINTIFF STATES A CLAIM FOR BREACH OF CONFIDENCE ........ 14

V. PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT ........ 16

VI. DEFENDANT'S MOTION TO STRIKE IS PREMATURE ........ 18

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**


*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) .......... passim

*AMC/Jeep of Vero Beach, Inc. v. Funston*,
403 So. 2d 602 (Fla. Dist. Ct. App. 1981) .......... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8

*B.N. v. Oregon Reprod. Med., LLC*,
2026 WL 915343 (D. Or. Apr. 3, 2026) .......... 17, 19

*Baker v. Akumin Corp.*,
2024 WL 1931480 (S.D. Fla. Apr. 16, 2024) .......... 22

*Baron v. Syniverse Corp.*,
2022 WL 6162696 (M.D. Fla. Oct. 7, 2022) .......... 22

*Baughcum v. Jackson*,
92 F.4th 1024 (11th Cir. 2024) .......... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 8

*Caine v. Sturdy Mem'l Hosp., Inc.*,
2026 WL 673483 (D. Mass. Mar. 10, 2026) .......... 18

*Chaparro v. Carnival Corp.*,
693 F.3d 1333 (11th Cir. 2012) .......... 8

*Cobbs v. PetMed Express, Inc.*,
2026 WL 905375 (S.D. Fla. Jan. 14, 2026) .......... 8

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .......... 20

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) .......... 11

*D.S. v. Tallahassee Mem'l HealthCare*,
2024 WL 2318621 (N.D. Fla. May 22, 2024) .......... 7, 20

*Daniel v. Navient Sols., LLC*,
328 F. Supp. 3d 1319 (M.D. Fla. 2018) .......... 23

*De Ford v. Koutoulas*,
2025 WL 4086346 (M.D. Fla. Dec. 2, 2025) .......... 11

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .......... 25

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) .......... 12

*Desue v. 20/20 Eye Care Network, Inc.*,
2022 WL 796367 (S.D. Fla. Mar. 15, 2022) .......... 20

*DiPierro v. Fla. Health Scis. Ctr., Inc.*,
737 F. Supp. 3d 1314 (M.D. Fla. 2024) .......... 21

*Dykes v. Dudek*,
2011 WL 4904407 (N.D. Fla. Oct. 14, 2011) .......... 24

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 25

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .......... 11

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) .......... 19

*Gelato & Panini LLC v. Simon Prop. Grp., Inc.*,
2022 WL 17987098 (S.D. Fla. Mar. 22, 2022) .......... 9, 24

*Georgia v. Public.Resource.Org, Inc.*,
590 U.S. 255 (2020) .......... 14

*Glob. Marine Expl., Inc. v. Republic of France*,
151 F.4th 1296 (11th Cir. 2025) .......... 22

*Hunt v. Aimco Properties, L.P.*,
814 F.3d 1213 (11th Cir. 2016) .......... 8

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
380 F. Supp. 3d 1243 (M.D. Fla. 2019) ........ 22

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 17

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ........ 20

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 12, 17

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 10

*Italiano v. Jones Chemicals, Inc.*,
908 F. Supp. 904 (M.D. Fla. 1995) ........ 9

*Licul v. Volkswagen Grp. of Am., Inc.*,
2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ........ 23

*Lopez v. Consumer Safety Tech., LLC*,
2024 WL 2111876 (M.D. Fla. May 10, 2024) ........ 24

*Magluta v. Samples*,
375 F.3d 1269 (11th Cir. 2004) ........ 8

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) ........ 20

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ........ 19

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ........ 10

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. June 3, 2024) ........ 9

*Pincus v. Am. Traffic Sols., Inc.*,
333 So. 3d 1095 (Fla. 2022) ........ 22

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 10

*Progin v. UMass Memorial Health Care, Inc.*,
2026 WL 632770 (D. Mass. Mar. 6, 2026) ........................................................19

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..............................................................19

*Sharfman v. Premier Med., Inc.*,
2021 WL 6884683 (M.D. Fla. Dec. 29, 2021) ....................................................24

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).........................................................................................10

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025).......................................................19

*Tash v. Vision Service Plan*,
2026 WL 1012680 (E.D. Cal. Apr. 14, 2026) .....................................................11

*Tejon v. Zeus Networks, LLC*,
2026 WL 1194722 (11th Cir. May 1, 2026) .......................................................15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)......................................................................................9, 10

*United States v. Baxter Int'l, Inc.*,
345 F.3d 866 (11th Cir. 2003) ..........................................................................24

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)...............................................................15

*Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) ........................................................................25

*W.W. v. Orlando Health*,
2025 WL 722892 (M.D. Fla. Mar. 6, 2025)...............................................passim

*WBSY Licensing, LLC v. Duval Cnty. Sch. Bd.*,
2022 WL 1750425 (M.D. Fla. May 10, 2022) ....................................................15

*Weaver v. Mateer & Harbert, P.A.*,
2012 WL 3065362 (M.D. Fla. July 27, 2012) .....................................................23

*Yachera v. Westminster Pharms., LLC*,
477 F. Supp. 3d 1251 (M.D. Fla. 2020)..............................................................23

**STATUTES**

18 U.S.C. § 2510(8) ....................16

42 U.S.C. § 1320d....................6

42 U.S.C. § 1320d-6....................19

42 U.S.C. § 1320d(3) ....................20

42 U.S.C. § 1395x(r) ....................20

42 U.S.C. § 1395x(s)(1)....................20

Fla. Stat. § 456.057 ....................6

Fla. Stat. § 456.057(2)(c)....................20

Fla. Stat. § 456.057(2)(k)....................20

Fla. Stat. § 934.02(7)....................16

Fla. Stat. § 456.057(7)(b).................... 15, 18

Fla. Stat. § 934.03(3)(d)....................17

**RULES**

Fed. R. Civ. P. 8....................23

Fed. R. Civ. P. 12(b)(1)....................8

Fed. R. Civ. P.12(b)(6)....................8

Fed. R. Civ. P.12(f) ....................9

**REGULATIONS**

45 C.F.R. § 164.506....................14

45 C.F.R. § 164.508.................... 14, 18

45 C.F.R. § 164.510(1–2) ....................21

65 Fed. Reg. ....................21

67 Fed. Reg. ....................21

78 Fed. Reg. ....................................................................................................21

## INTRODUCTION

Congress and the Florida Legislature recognize the importance of maintaining the privacy of patients' protected health information ("PHI") and personally identifiable information ("PII"). *See e.g.* 42 U.S.C. § 1320d; Fla. Stat. § 456.057; *see generally W.W. v. Orlando Health*, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) (denying the defendant's motion to dismiss in an analogous healthcare tracking case); *Moreno v. Sage Dental Mgmt, LLC*, 6:25-cv-01043-JSS-DCI, ECF No. 41 (M.D. Fla. Mar. 12, 2026) (same); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *2–3, 5 (N.D. Ill. Sept. 9, 2024) (same); *D.S. v. Tallahassee Mem'l HealthCare*, 2024 WL 2318621, at *1–2 (N.D. Fla. May 22, 2024) (same); *Cyr v. Orlando Health, Inc.,* 8:23-CV-00588, ECF No. 37 (M.D. Fla. July 5, 2023) (same).

Despite its duties as a healthcare provider, Defendant Deca Dental Management, LLC ("Defendant") disregards its legal responsibility to prevent patients' sensitive and confidential health information from unauthorized use and disclosure by intercepting and disclosing this information to Google LLC ("Google") when patients enter details and book appointments on www.myidealdental.com (the "Website").

Plaintiff Dominique Pollard ("Plaintiff") is a Florida resident who accessed Defendant's Website to book a dental appointment with Defendant. *See* Complaint (ECF No. 1) ("Compl.") ¶¶ 9–12. Despite reasonable expectations of confidentiality, the information she provided in connection with her dental appointment booking was

intercepted by Defendant, via its use of the Google Analytics and Google DoubleClick (the "Tracking Technologies")—and simultaneously disclosed this information to Google. Compl. ¶¶ 9–14, 35–92. This includes private, and legally protected information such as patient status, appointment reason, and appointment location. Compl. ¶¶ 77–92. This conduct is an egregious violation of Defendant's duties as a medical provider and is unlawful under both state and federal law. Compl. ¶¶ 6–8, 18–34, 112–160.

Defendant now moves to dismiss, or in the alternative strike Plaintiff's Complaint. *See* Defendant's Motion to Dismiss or Strike (ECF No. 37) ("Mot."). For the reasons set forth herein, Plaintiff respectfully requests this Court deny Defendant's Motion in its entirety.

## LEGAL STANDARD

"Challenges to a party's standing are properly raised under Federal Rule of Civil Procedure 12(b)(1) as a jurisdictional challenge to a court's subject matter jurisdiction. *Cobbs v. PetMed Express, Inc.*, 2026 WL 905375 (S.D. Fla. Jan. 14, 2026) (citations omitted). "The Court must merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion." *Id.* (citations omitted).

To survive a Rule 12(b)(6) motion to dismiss "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Hunt v. Aimco Properties, L.P.,* 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true all factual allegations contained in the

complaint and draw reasonable inferences in the plaintiff's favor. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012); *Ashcroft v. Iqba*l, 556 U.S. 662, 678 (2009). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (cleaned up).

A Rule 12(f) motion to strike requires the movant to show "the plaintiff's class action allegations are redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f); *Café, Gelato & Panini LLC v. Simon Prop. Grp., Inc.*, 2022 WL 17987098, at *3 (S.D. Fla. Mar. 22, 2022). Critically motions to strike are generally disfavored and "will usually be denied." *Italiano v. Jones Chemicals, Inc.*, 908 F. Supp. 904, 907 (M.D. Fla. 1995).

## ARGUMENT

### I. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS

#### A. Plaintiff's Injury Is Concrete And Particularized

Defendant's 12(b)(1) attack rests on two flawed premises: Plaintiff's harm is solely attributable to Google, and the Complaint does not tie Defendant's conduct to Plaintiff's individual information. Mot. at 4–9. Defendant is wrong on both counts.

To establish a concrete and particularized injury, the injury suffered must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 270–71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words . .

. [i]t is not necessary . . . for a plaintiff asserting such a claim to plead or establish the elements of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In determining "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). The Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (citing *TransUnion*, 594 U.S. at 424). The Eleventh Circuit is in accord, recognizing "an individual has an interest in preventing disclosure of personal information." *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017).

Here, Plaintiff alleges precisely such a disclosure. Defendant intercepted Plaintiff's communications with the Website regarding her dental appointment booking and contemporaneously transmitted them, with personal identifiers, to Google. Compl. ¶¶ 9–11,77–92. The Complaint details, with example screenshots, the specific data fields transmitted, including appointment booking confirmation, appointment type, appointment location, and personally identifiable information (cid and auid identifiers, IP address, and browser fingerprints). Compl. ¶¶ 55–72, 77–92, Figs. 2–3.

Defendant's argument that "Plaintiff does not even allege that she received targeted advertisements on her Google account relating to Defendant's products or services" disregards the allegations in the Complaint and confuses a symptom of the harm with the injury itself. Whether Plaintiff later received a targeted advertising is irrelevant; the privacy injury occurred the moment Defendant disclosed her communications to Google without consent. *Perry,* 854 F.3d at 1340 (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information.")); *Tash v. Vision Service Plan*, 2026 WL 1012680, at *4 (E.D. Cal. Apr. 14, 2026) ("Defendants are incorrect that [plaintiff's] failure to allege he was subjected to targeted ads because of this disclosure deprives him of an injury worthy of standing . . . Importantly, 'privacy torts do not always require additional consequences to be actionable.' . . . The harm inflicted by the intrusion itself permits liability.") (cleaned up); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) ("the legal injury at the heart of plaintiffs' case . . . occurs when the personal information is obtained in the first instance. The fact that misappropriated data may be anonymized by stripping it from its owner and blending it with other data does not cure or wash away the original violation."). Even so, Plaintiff alleges "[a]fter booking appointments on the Ideal Dental Website, Plaintiff began receiving targeted advertisements for similar products and services." Compl. ¶ 11. At the pleading stage, nothing more is required.

### B. Plaintiff's Injury Is Fairly Traceable To Defendant's Conduct

Defendant's traceability argument—that it is not liable because Plaintiff provided her information to Google when creating a Google account—misapprehends both the law and the allegations set forth in the Complaint. Mot. at 4–6. Traceability, "in the standing context, . . . is 'less stringent' than the tort law concept of 'proximate cause.'" *De Ford v. Koutoulas,* 2025 WL 4086346, at *5 (M.D. Fla. Dec. 2, 2025) (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019)); *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) ("Article III requires no more than *de facto* causality"). Crucially, Plaintiff's injury need only "result[] from the defendant's action" not that Defendant be the sole cause. *Baughcum v. Jackson*, 92 F.4th 1024, 1032 (11th Cir. 2024).

Plaintiff's allegations exceed this threshold. The Complaint alleges Defendant—not Google—"chose to embed the DoubleClick API and Google Analytics tracking code on the Website, whereby it disclosed the confidential PHI of its patients with Google for targeted advertising purposes." Compl. ¶ 14, 77–92. The injury here is Defendant's disclosure of patient-specific dental-service information (patient status, appointment reason, appointment location, and identifiers linking those facts to her). Compl. ¶¶ 1–8, 9–12, 14, 77–92. Plaintiff entrusted this information to Defendant in its role as her dental provider and Google would not otherwise possess her legally protected PHI had Defendant not embedded the Tracking Technologies on the Website. *Id; In re Meta Pixel Healthcare Litig.,* 647 F.

Supp. 3d 778, 792 (N.D. Cal. 2022) (patient status is protected under HIPAA); *see generally W.W.*, 2025 WL 722892; *A.D.*, 2024 WL 4119153.

### C. Plaintiff Adequately Pleads Disclosure Of Her Specific Information

Defendant argues that Plaintiff fails to provide "factual allegations of Plaintiff's unique Website experience." Mot. at 7. That is wrong.

Here, Plaintiff alleges she personally used the Website in or around March 2025 to book a dental appointment, and that Defendant embedded the Google Tracking Technologies onto the very same Website. Compl. ¶¶ 9–12, 14, 50–58, 76, 77–92. By design, the Tracking Technologies, intercepted and disclosed every patient's appointment communications—including Plaintiff's—to Google in a manner described throughout the Complaint. Compl. ¶¶ 46–76 (how the Google Tracking Technologies function), 77–92 (how the Tracking Technologies function on the Website); Figs. 2–3 (examples of the precise information Defendant discloses). Drawing all reasonable inferences in Plaintiff's favor, these allegations more than sufficient to allege that Plaintiff's own communications were among the data Defendant intercepted and disclosed to Google.

Defendant's demand that Plaintiff produce screenshots specific to her unique session is precisely the kind of "hypertechnical, code-pleading" requirement Rule 8 forecloses. *W.W.*, 2025 WL 722892, at *2. Further, the Complaint is premised on the surreptitious nature of the Tracking Technologies as they are "entirely invisible to a website visitor." Compl. ¶ 94. Court's in this District routinely find such allegations

to satisfy pleading standards. *See, e.g., id.; Moreno*, 6:25-cv-01043-JSS-DCI (ECF No. 41).

## II. PLAINTIFF DID NOT CONSENT TO DEFENDANT'S CONDUCT

Defendant argues "the lawsuit must be dismissed as Plaintiff consented to the alleged conduct." Mot. at 12. That is wrong.

*First*, Plaintiff's allegations are premised on Defendant's ***unlawful*** implementation of the Tracking Technologies. *See generally*, Compl. Consent is rarely a defense to criminal conduct, and here, Defendant's conduct falls squarely within what the U.S. Department of Health and Human Services has warned is unlawful:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.

Compl. ¶ 27 (citations omitted); *see also* Compl. ¶¶ 18–34 (FTC and HHS pronouncements). Because Defendant failed to implement the technologies in a lawful manner (i.e., in compliance with its obligations under state and federal law), Plaintiff did not "consent" to this unlawful interception and disclosure of her data. Compl. ¶¶ 8, 14, 18–34. Defendant's knowledge of its conduct being unlawful stems from the bedrock principle that "every citizen is presumed to know the law." *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 265 (2020).

*Second*, HIPAA distinguishes between "consent" and "authorization." As a regulated entity under HIPAA, Defendant must adhere to the heightened authorization requirements when PHI and PII are being disclosed to third parties (including, as is the case here, Google). Compl. ¶¶ 1–8, 35–92. While consent may allow certain uses or disclosures of PHI for treatment, payment, or healthcare operations, it is not sufficient for uses or disclosures that require an authorization under 45 C.F.R. § 164.508, which encompasses most uses, including marketing. *Compare* 45 C.F.R. § 164.506 (consent) *with* 45 C.F.R. § 164.508 (authorizations). Likewise, in Florida "[a]bsent a specific written release or authorization permitting utilization of patient information for solicitation or marketing the sale of goods or services, any use of that information for those purposes is prohibited." Fla. Stat. § 456.057(7)(b).

Defendant's consent argument rests entirely on the Boone Declaration which is deficient for a number of reasons. For example, under *Tejon v. Zeus Networks LLC*, Defendant has the burden of proving actual notice or inquiry notice (a two-part test requiring conspicuousness and a manifestation of assent). *See generally Tejon v. Zeus Networks, LLC*, 2026 WL 1194722, at *1–4 (11th Cir. May 1, 2026). The Boone Declaration does neither. Defendant fails to attach the screens Plaintiff allegedly saw while booking her appointment (i.e., the user flow), the location or visibility of any link to the Privacy Policy on those screens, the precise language presented to Plaintiff, or any record that she affirmatively assented to the Privacy Policy (as opposed to merely toggling marketing preferences). *See generally* Boone Decl. Even so, the

"marketing preferences" Plaintiff purportedly agreed to, only extends so far as "email and text message." Boone Decl. ¶ 6.

In any event, the Privacy Policy Defendant attempts to invoke undermines its argument. The Privacy Policy assures patients that "information collected is NOT Protected Health Information and is not shared outside of Deca Dental." Compl. ¶ 78. A person cannot consent to conduct via a Privacy Policy that expressly disclaims the very conduct at issue. *See e.g. In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019) ("if the contract language at issue is reasonably susceptible to more than one interpretation, . . . the Court cannot decide the consent issue . . . at the motion to dismiss stage."); *WBSY Licensing, LLC v. Duval Cnty. Sch. Bd.*, 2022 WL 1750425, at *2 (M.D. Fla. May 10, 2022) ("it is generally improper for a court to interpret an ambiguous contract at the motion to dismiss stage").

## III. PLAINTIFF STATES A CLAIM UNDER THE ECPA AND THE FSCA

### A. Plaintiff Adequately Alleges Interception And Disclosure Of "Contents" Of Her Communications

Defendant insists that the Complaint "lacks factual allegations that Defendant intercepted and transmitted [Plaintiff's] electronic communications on the Website to Google." Mot. at 13. That is wrong.

The FSCA and ECPA both define "contents" broadly, encompassing "any information concerning the substance, purport, or meaning of the communication." Fla. Stat. § 934.02(7); 18 U.S.C. § 2510(8). In healthcare cases involving these Tracking Technologies, federal courts have held that PHI and PII

intercepted through qualify as "contents." *See W.W.*, 2025 WL 722892, at *5–6; *A.D.*, 2024 WL 4119153, at *5–6; *Cyr*, No. 8:23-cv-588-WFJ-CPT, ECF No. 37; *Moreno*, 6:25-cv-01043-JSS-DCI, ECF No. 41.

Here, the Complaint includes screenshots from Defendant's Website with examples of the specific contents disclosed: the URL of the booked appointment, the reason for the appointment, and alleges the Website collects Plaintiff's IP address, browser fingerprints, and unique identifiers (cid and auid), sufficient for Google to ascertain her identity. Compl. ¶¶ 77–92, Figs. 2–3. When coupled with Plaintiff's specific allegations, i.e., that she used the Website to book an appointment for dental services, the Complaint clearly alleges Defendant intercepted and transmitted her electronic communications to Google. Compl. ¶¶ 9–12, 77–92.

These allegations are substantially similar to those deemed sufficient in *W.W.*, where "the message Plaintiff sought to convey to Defendant through its website—information related to her medical conditions and providers"—was held to be "contents." *W.W.*, 2025 WL 722892, at *5. At the pleading stage, nothing more is required. *See e.g. Id.* at *5–6; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("log-in buttons and the kinds of descriptive URLs identified in the Smith Decl. are "contents" within the meaning of the statute"); *A.D.*, 2024 WL 4119153, at *5 (same); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("If an address, phone number, or URL is instead part of the substantive information conveyed to the recipient, then by definition it is 'content.'"); *B.N. v. Oregon Reprod. Med., LLC*, 2026 WL 915343, at *5 (D. Or. Apr. 3, 2026).

### B. Defendant's Conduct Falls Squarely Within The Crime-Tort Exception

Defendant also argues Plaintiff's ECPA claim is barred because the crime-tort exception does not apply. Mot. at 13–15. That is wrong.

As a preliminary matter, Defendant posits the crime-tort exception also applies to Plaintiff's FSCA claim. Mot. at 13. Not so. Unlike the ECPA, which is a one-party consent statute, the FSCA is an ***all-party*** consent statute. *See* Fla. Stat. § 934.03(3)(d). As discussed *supra*-Section II, Plaintiff did not consent to Defendant's unlawful interception and disclosure of her PII and PHI to Google, such that this Court need not reach the applicability of the crime-tort exception to her FSCA claims.

*W.W.* is directly on point. There, the court found "no basis in the text of the Wiretap Act's crime-tort exception to conclude that these allegations are insufficient." *W.W.*, 2025 WL 722892, at *7.

Similarly, in *A.D. v. Aspen Dental Management LLC*, the court found:

> Plaintiffs' allegations regarding their individual experiences using Aspen's online platform—and the inferences drawn from those experiences—are sufficient to plausibly allege that Aspen disclosed information regarding their personal health conditions and treatments to third parties. Such information qualifies as IIHI for purposes of HIPAA. Further, Plaintiffs allege that Aspen's collection and disclosure of their personal health information was done knowingly and for purposes of financial gain—namely, to bolster profits via targeted marketing campaigns.

*A.D.*, 2024 WL 4119153, at *3.

Here, Plaintiff alleges Defendant—a HIPAA-covered entity—intercepted and disclosed Plaintiff's PHI to Google in violation of clear pronouncements by the FTC

and the Department of Health and Human Services. Compl. ¶¶ 18–34. Such an unauthorized disclosure of PHI for marketing purposes (both Defendant's and Google's own independent use) is unlawful absent a written authorization. 45 C.F.R. § 164.508; Fla. Stat. § 456.057(7)(b).

Defendant's reliance on the out-of-circuit, District of Massachusetts decisions in *Caine v. Sturdy Mem'l Hosp., Inc.*, 2026 WL 673483 (D. Mass. Mar. 10, 2026), and *Progin v. UMass Memorial Health Care, Inc.*, 2026 WL 632770 (D. Mass. Mar. 6, 2026), is unavailing. Mot. at 14–15. Contrary to Defendant's position, a majority of courts throughout the nation have declined to impose this heightened standard; instead finding substantially similar allegations sufficient to invoke the crime-tort exception. *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious."); *A.D.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (in applying the crime-tort exception, the court held "Plaintiffs' allegations regarding their individual experiences using Aspen's online platform—and the inferences drawn from those experiences—are sufficient to plausibly allege that Aspen disclosed information regarding their personal health conditions and treatments to third parties"); *B.N. v. Oregon Reprod. Med., LLC*, 2026 WL 915343, at *3 ("a violation of HIPAA can fall under ECPA's crime-tort exception"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply"); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *5 (C.D. Cal. Jan. 30, 2025) ("knowingly . . . disclos[ing] individually

identifiable health information to another person, 42 U.S.C. § 1320d-6, in violation of HIPAA, may satisfy the crime-tort exception."); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *5 (E.D. Pa. Sept. 30, 2024) ("Plaintiffs need not plead financial motive to invoke the crime-tort exception as they have already sufficiently pleaded Defendant's intention to violate HIPAA"); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 378–80 (S.D.N.Y. 2024) (collecting cases).

At a minimum, Plaintiff respectfully requests this Court adopt the well-reasoned position of the court in *W.W.* and find whether the crime-tort exception applies is "more fit for resolution at summary judgment or trial than at the motion to dismiss stage." *W.W.*, 2025 WL 722892, at *7; (citing *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023)); *D.S.*, 2024 WL 2318621, at *1.

## IV. PLAINTIFF STATES A CLAIM FOR BREACH OF CONFIDENCE

Under Florida law "[a] breach of confidence involves the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Desue v. 20/20 Eye Care Network, Inc.*, 2022 WL 796367, at *9 (S.D. Fla. Mar. 15, 2022) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020)). Here, Plaintiff's Complaint clearly alleges facts to support a claim for breach of confidence. Compl. ¶¶ 146–53.

*First*, Plaintiff alleges she disclosed her PII and PHI to Defendant (a HIPAA covered entity) while scheduling her appointment. Compl. ¶¶ 9–12; 42 U.S.C. §

1395x(r);[1] *and* Fla. Stat. § 456.057(2)(c) (dental hygienists); § 456.057(2)(k) (encompassing dentist licensed under ch. 466).

*Second*, she alleges Defendant disclosed this legally protected information to Google without her written authorization. Compl. ¶¶ 8, 10, 14, 21, 24, 27, 116, 143, 151. In fact, Defendant's Privacy Policy expressly warrants the "information collected is NOT Protected Health Information and is not shared outside of Deca Dental." Compl. ¶ 78.

*Third*, Defendant intercepts and disclosed to Google nonpublic information learned in the scope of the dentist-patient relationship in the form of PHI (e.g., patient status,[2] appointment type, and appointment location) and PII (e.g., auid, cid, IP address, browser fingerprinting, etc.). Compl. ¶¶ 77–92, Figs. 2–3. At this stage, nothing further is required.

Indeed, the court in *W.W.* found substantially similar allegations sufficient to state a breach of confidence claim, emphasizing the connection between the information the plaintiff disclosed to the defendant's website—specifically complaints

---

[1] HIPAA adopts the definition of health care provider in 42 U.S.C. § 1320d(3), which includes "a provider of medical or other health services (as defined in section 1395x(s) of this title)." 42 U.S.C. § 1395x(s)(1) includes "physician's services" and in § 1395x(r) physician is defined to includes "a doctor of . . . dental medicine who is legally authorized to practice dentistry."

[2] Patient status alone is recognized as protected under HIPAA. *See, e.g.,* 65 Fed. Reg. 82717)(Dec. 28, 2000)(selling patient list to marketing firm violates HIPAA); 67 Fed. Reg. 53186 (Aug. 14, 2002)(requiring prior written ***authorization*** to disclose PHI for marketing communications); 78 Fed. Reg. 5642 (Jan. 25, 2013)(disclosure of patient name, address, or identification number violates HIPAA); *see also* 45 C.F.R. § 164.510(1–2).

of medical conditions—and the advertisements targeted to these specific conditions she received after doing so. *W.W.*, 2025 WL 722892, at *8.

Defendant's case law does not compel a different result, as the majority its cited authority relates to data breach litigation wherein a third party is responsible for the breach. *DiPierro v. Fla. Health Scis. Ctr., Inc.*, 737 F. Supp. 3d 1314, 1327 (M.D. Fla. 2024); *Baker v. Akumin Corp.*, 2024 WL 1931480, at *6–7 (S.D. Fla. Apr. 16, 2024); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019); *Baron v. Syniverse Corp.*, 2022 WL 6162696 (M.D. Fla. Oct. 7, 2022); *cf. W.W.*, 2025 WL 722892, at *11 (M.D. Fla. Mar. 6, 2025) ("Florida law permits a breach of contract claim to proceed even absent proof of quantifiable damages, because the plaintiff in such a case would still be entitled to nominal damages if she established a breach") (citing *AMC/Jeep of Vero Beach, Inc. v. Funston,* 403 So. 2d 602, 605 (Fla. Dist. Ct. App. 1981) ("While there is a legal remedy for every legal wrong and, thus, a cause of action exists for every breach of contract, an aggrieved party who has suffered no damage is only entitled to a judgment for nominal damages.")).

## V. PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT

"To succeed on an unjust-enrichment claim under Florida law, a plaintiff must prove three elements: (1) he conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Glob. Marine Expl., Inc.*

*v. Republic of France*, 151 F.4th 1296, 1311 (11th Cir. 2025) (citing *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022)).

Here, Plaintiff pleads each element: she alleges Defendant—by choosing to embed the Tracking Technologies on the Website—intercepted her PHI and PII and disclosed it to Google for its own benefit. Compl. ¶¶ 14 ("Had Defendant complied with the law, it would not have received the information and marketing services it received."), 18–34 (Defendant violates "clear pronouncements by the FTC and HHS); 85 (This allows . . . Defendant, to profit from this information for targeted advertising purposes), 92 ("Defendant engages in this deceptive conduct for its own profit at the expense of their patients' privacy"). *W.W.*, 2025 WL 722892, at *10 ("whether a defendant benefitted at the plaintiff's expense . . . 'is a factual question not appropriately resolved on a motion to dismiss.'") (citing *Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1326 (M.D. Fla. 2018)).

Defendant's case law is unpersuasive. *Compare Weaver v. Mateer & Harbert, P.A.*, 2012 WL 3065362, at *11 (M.D. Fla. July 27, 2012) (summary judgment); *with* Fed. R. Civ. Proc. R. 8 (permitting pleading alternative claims); *also compare Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013) (dismissing unjust enrichment claim where the "Plaintiffs' appropriate legal remedy is under FDUTPA"); *with* Compl. ¶¶ 154–160.

## VI. DEFENDANT'S MOTION TO STRIKE IS PREMATURE

Defendant argues "the class definitions must be stricken or narrowed" because "the class definition includes members whose personally identifiable information was not collected." Mot. at 21. That is wrong.

"Striking or dismissing 'class allegations at the pleading stage is the functional equivalent of denying class certification.'" *Yachera v. Westminster Pharms., LLC*, 477 F. Supp. 3d 1251, 1276 (M.D. Fla. 2020). Consequently, "many district courts have found it proper, when faced with a motion to strike class allegations, to 'view the Rule 23 factors through the lens of the Rule 12(f) standard for motions to strike' and ask 'whether [the plaintiff's] class action allegations are 'redundant, immaterial, impertinent, or scandalous.'" *Cafe, Gelato & Panini LLC v. Simon Prop. Grp., Inc.*, 2022 WL 17987098 (S.D. Fla. Mar. 22, 2022); *Lopez v. Consumer Safety Tech., LLC*, 2024 WL 2111876, at *4 (M.D. Fla. May 10, 2024) ("It is rarely proper for a court to strike class allegations based only on the face of the complaint"); *Sharfman v. Premier Med., Inc.,* 2021 WL 6884683, at *6 (M.D. Fla. Dec. 29, 2021) ("Defendant points to no authority that would support the striking of class allegations from the complaint, prior to the class certification stage"); *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 882 (11th Cir. 2003) ("In a class action, it is sufficient that a complaint generally give the defendant notice of the nature and scope of the plaintiffs' claims."). Here, Plaintiff has given Defendant ample notice of the nature and scope of both her individual claims and those of the proposed class. Compl. ¶¶ 1–8, 9–12 (Plaintiff specific allegations), 77–

100 (functionality of the Website), 101–111 (Class Allegations). Nothing more is required.

Defendant's case law does not compel a different result. In *Lopez v. Consumer Safety Tech., LLC*, the only case addressing a motion to strike class allegations on the pleadings, the court denied the motion to strike. 2024 WL 2111876, at *4–6 (M.D. Fla. May 10, 2024). The remainder of its cited authority relates solely to challenging a class that has already been certified or orders ruling on a motion for class certification ***not*** a motion to dismiss. *See, e.g. Dykes v. Dudek*, 2011 WL 4904407, at *1 (N.D. Fla. Oct. 14, 2011); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1260 (11th Cir. 2009); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 260–76 (2d Cir. 2006).

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in full. Alternatively, if the Motion is granted in any respect, Plaintiff requests leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Dated: May 18, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Stephen A. Beck*
Stephen A. Beck

Stephen A. Beck
Sarah N. Westcot
Lauren A. VanHemel
701 Brickell Avenue, Suite 2100
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 679-9006

Email: sbeck@bursor.com
swestcot@bursor.com
lvanhemel@bursor.com

*Counsel for Plaintiff*